Plaintiff-Appellant the State of Ohio appeals the trial court's October 27, 1998, decision suppressing all of Defendant-Appellee Erin Hawkey's statements made during an interview with Darke County Sheriff's Deputy Rodney Baker. The State alleges that the trial court erred in suppressing the statements because Hawkey was not subject to custodial interrogation, thus there was no need to provide Hawkey withMiranda warnings prior to the interview.
Hawkey was interviewed as a result of the June 11, 1998, theft of lottery tickets from the New Madison Mini-Mart. Hawkey was seen by the Mini-Mart's clerk Angie Godown outside the Mini-Mart in the passenger seat of a black car on the night of the theft. The next day, at the Nickel Saver Marathon in Preble County, a six foot tall man attempted to redeem one of the stolen lottery tickets. Deputy Baker believed that this man was Hawkey's boyfriend Billy Rhoades who was seen inside the Mini-Mart the night the theft occurred.
On June 15, 1998, pursuant to his investigation Deputy Baker proceeded to Hawkey's home to speak with her. Hawkey was not there but Hawkey's parents, upon the request of Deputy Baker, called Hawkey to have her return home. While waiting for Hawkey Deputy Baker searched Hawkey's room upon her parents' consent. When Hawkey did not appear at her house Deputy Baker drove to Billy Rhoades' home, knocked on the door, and asked for Hawkey. Hawkey agreed to speak with Deputy Baker and she was led to his cruiser where they sat in the front seat for over an hour while Deputy Baker questioned Hawkey regarding the theft.
Hawkey first denied any involvement and knowledge of the incident. At that point, Hawkey asked Deputy Baker if they were "done"; Deputy Baker replied "Not until we get this settled." Deputy Baker told Hawkey she was lying, and he again began to question her about the theft. After giving Deputy Baker several different stories, Hawkey did eventually admit to being at the Mini Mart with Rhoades. She stated that Rhoades had found the stolen tickets on the ground in the parking lot, and she admitted to trying to redeem one of the stolen lottery tickets at the Nickel Saver the next day. To obtain this statement Deputy Baker lied to Hawkey by stating he had a videotape of Rhoades cashing the ticket at the Nickel Saver, and he also lied by stating that Rhoades had been identified in a line up by the clerk at the Nickel Saver.
Although Deputy Baker claimed Hawkey was a witness and not a suspect in his investigation, he never stated this to Hawkey. Additionally, Deputy Baker testified that he did state to Hawkey "I am not going to take you to jail no matter what you tell me." Hawkey claims this was not said to her, but instead she was told by Deputy Baker that she could be sent to jail for over one year for her offense.
Deputy Baker testified that he did not inform Hawkey of herMiranda rights because he felt she was never a suspect and was never in custody; however, at no point during the interrogation did he advise her that she was free to leave. Additionally, Hawkey testified that she believed that she was not free to leave the cruiser until she gave a taped statement to Deputy Baker.
At the conclusion of the interview, Hawkey exited the cruiser and Deputy Baker followed her across the street to Rhoades' home. Based on her statements made to Deputy Baker, Hawkey was cited for Obstruction of Official Business in violation of Section2921.31(A) O.R.C.
The trial court judge suppressed Hawkey's statements at the conclusion of the October 27, 1998 hearing, finding that she had been subject to custodial interrogation but had not been advised of her Miranda rights. The State now appeals the trial court's granting of the motion to suppress in a timely manner.
 I.
The State's sole assignment of error is as follows:
 THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT GRANTED APPELLEE'S MOTION TO SUPPRESS HOLDING THAT THE INTERVIEW OF APPELLEE BY DEPUTY BAKER WAS A CUSTODIAL INTERROGATION.
The State contends that under the totality of the circumstances Hawkey was not in custody during the interrogation because she voluntarily entered the cruiser for questioning, she was not a suspect in the theft, and her freedom to leave was not restricted. In this case, we agree with the trial court's finding that the questioning of Hawkey by Deputy Baker constituted "custodial interrogation" as defined in Miranda v. Arizona (1966),384 U.S. 436, and thus because Hawkey was not made aware of herMiranda rights, her statements were illegally obtained.
Miranda warnings must be provided to a person who is subjected to interrogation in a custodial setting. Id. The United States Supreme Court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. at 444. In Stansbury v.California (1994), 511 U.S. 318, 322, the Court further stated :
 In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but "the ultimate inquiry is simply whether there [was] a `formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." California v. Beheler (1983), 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (per curiam) (quoting Oregon v. Mathiason (1977), 429 U.S. 492, 495).
See also, State v. Biros (1997), 78 Ohio St.3d 426, 440. In making the evaluation of whether or not a person is "in custody," neither an officer's subjective intent nor the defendant's subjective belief is relevant. State v. Hopfer (1996), 112 Ohio App.3d 521,546; State v. Sanchez (April 24, 1998), Greene App. No. 97-CA-32, unreported. Further, custodial arrest conveys a message to the individual "that he has no choice but to submit to the officer's will and to confess." Minnesota v. Murphy (1984),465 U.S. 420, 433.
We find that Hawkey's freedom was restrained to a degree associated with a formal arrest such that a reasonable person in the same situation would consider themselves to be in police custody. According to the facts elicited during the suppression hearing, Hawkey was sought out for questioning at two different locations regarding the theft incident. When found by Deputy Baker, Hawkey was taken out from the neutral and familiar environment of the Rhoades' home and placed in isolation inside the cruiser. There Deputy Baker questioned her for over one hour, and the record supports a finding that at one point he did mention to Hawkey how much jail time she could serve.
Additionally, after her original denial of any involvement and knowledge in the theft, Hawkey asked if they were "done." Deputy Baker responded "Not until we get this settled," making it clear that Hawkey would not be free to leave until he received the "correct" information from Hawkey; namely an admission that she and Rhoades had participated in either the theft or the redemption of the lottery tickets. Deputy Baker informed Hawkey that he believed she was lying to him, and he again began questioning her.
Deputy Baker continued to question Hawkey until he received a taped statement stating that she and Rhoades had gone to the Nickel Saver to redeem the stolen lottery tickets. At that point the questioning ended, Deputy Baker followed Hawkey from the cruiser back to the Rhoades' porch where he cited her for Obstruction of Official Business. To this Court, it is clear that Deputy Baker's actions, including the use of deceptive practices to obtain a confession, made it clear to Hawkey that she had no choice but to continue with the questioning until she admitted her knowledge and responsibility in the matter.
We conclude that Miranda warnings were required prior to Deputy Baker's questioning of Hawkey concerning the theft of the lottery tickets. The questions asked by Deputy Baker were designed to elicit an incriminating response by Hawkey, as evidenced by the length of time she was interviewed and the repetition of the line of questioning. Hawkey's freedom of movement was restrained until Deputy Baker decided he had elicited the proper information from Hawkey. Because Miranda warnings were not given in this case, the trial court was correct in sustaining Hawkey's motion to suppress her statements made in the cruiser to Deputy Baker.
Accordingly, the judgement of the trial court is affirmed.
BROGAN, J. and WOLFF, J., concur.
Copies mailed to:
Jesse J. Green
Thomas L. Guillozet
Hon. Gene R. Hoellrich